**Andrew DAYTON, Appellant,**

v.

**STATE of Alaska, Appellee.**

No. A–7724.

Court of Appeals of Alaska.

April 23, 2004.

---

John M. Rice, Juneau, for Appellant.

Nancy R. Simel, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

### OPINION

STEWART, Judge.

This is the second opinion we have issued in this case. In *Dayton v. State,* 54 P.3d 817 (Alaska App.2002), we upheld the superior court's decision on all but one of the claims that Dayton brought on appeal. We remand-ed this case to the superior court for additional findings on whether a database used for statistical analysis of DNA profile frequencies was the type of data that experts in the field would reasonably rely on. After taking additional evidence, the superior court found that the database met the requirements of Alaska Evidence Rule 703. This finding is supported by substantial evidence. Because the database met the requirements of Rule 703, the superior court did not abuse its discretion by allowing testimony on DNA profile frequencies using that database. Therefore, we affirm Dayton's conviction.

We discussed the facts of Dayton's crimes in our previous opinion and we need not repeat that discussion here. Dayton was charged with first-degree sexual assault and first-degree burglary for breaking into S.S.'s house in Huslia and sexually assaulting her.[1] Dayton's first trial ended with a hung jury, but he was convicted at his retrial.

Hayne Hamilton, a forensic serologist at the Alaska Scientific Crime Detection Laboratory (hereafter the "crime lab"), conducted DQ alpha and polymarker DNA analysis on various samples seized during the investigation. The testing showed that Dayton's DNA was a potential source for the DNA found in sperm collected from S.S.'s vagina. Based on databases that the State had previously developed, Hamilton projected that the frequency of the DNA profile found in the sperm fraction was 1 in 3,500 for North Slope Inupiat Eskimos and 1 in 2,000 for Bethel/Wade Hampton Yup'ik Eskimos. As we noted in our earlier opinion, Hamilton could not calculate a DNA profile frequency for Athabascan Indians because she did not have an Athabascan database. (Dayton is an Athabascan Indian.)

During the first trial, as part of his defense, Dayton argued that the DNA evidence was meaningless without an Athabascan database. Dayton himself testified that he saw someone else having intercourse with S.S. and implied that his brother may have assaulted S.S. The first trial resulted with a hung jury.

---

1. AS 11.41.410(a)(1) and AS 11.46.300(a)(1), respectively.

After the first trial, the crime lab adopted the short tandem repeat (STR) system of DNA analysis. STR examines thirteen genetic loci and is more discriminating than DQ alpha and polymarker analysis, which checks six genetic loci. The crime lab created a database with genetic samples from Athabascan Indians. We discussed that process in our earlier opinion.

At Dayton's retrial before Superior Court Judge pro tem Jane F. Kauvar, the State again offered evidence that, based on Dayton's DNA profile and the DNA profile of the sperm collected from S.S., Dayton could not be excluded as the source of the sperm. The statistical analysis of the likelihood that this DNA profile would be repeated randomly in certain groups with existing databases was 1 in 22 billion for North American Caucasians, 1 in 6 billion for African–Americans, and 1 in 413 million for Hispanics. Dayton did not challenge this evidence.

In addition, the State offered evidence that STR analysis indicated that Dayton exhibited the DNA profile of the sperm taken from S.S. and the population frequency statistics based on the Athabascan database. Dayton objected to this evidence, arguing that the State had to establish the reliability of the Athabascan database in a hearing outside the presence of the jury before the expert witness could use the database as a basis for providing scientific evidence. Dayton relied on *Daubert v. Merrell Dow Pharmaceuticals, Inc.*[2] In *State v. Coon*,[3] the Alaska Supreme Court adopted a test for the admissibility of challenged scientific evidence, which was derived from *Daubert*.[4] The court indicated that *Daubert* factors provided a useful approach to analyzing the admissibility of such evidence.[5] Those factors are:

(1) whether the proffered scientific theory or technique can be (and has been) empirically tested (i.e., whether the scientific method is falsifiable and refutable); (2) whether the theory or technique has been subject to peer review and publication; (3)

whether the known or potential error rate of the theory or technique is acceptable, and whether the existence and maintenance of standards controls the technique's operation; and (4) whether the theory or technique has attained general acceptance.[6]

However, Judge Kauvar overruled Dayton's objection.

Using the Athabascan database developed by the crime lab, the State's expert testified that the likelihood was 1 in 2.5 million that the DNA profile from the sperm taken from S.S. would be repeated randomly in the Athabascan population. Because Dayton is an Athabascan, the Athabascan genetic frequency data was particularly probative.

Under Rule 703, expert witnesses can rely on facts or data outside their personal knowledge (indeed, facts or data that would not necessarily be admissible themselves) if those facts or data are "of a type reasonably relied upon by experts in the [applicable] field [when] forming opinions or inferences upon the subject [at issue]." The Commentary to Rule 703 states that the rule was designed to allow experts to rely on sources of information that constitute the recognized "tools" of their profession, that is, information that otherwise could not be introduced without "the expenditure of substantial time in producing and examining various authenticating witnesses."

In Dayton's case, the State's expert testified, based on the database developed for the Athabascan population, that the likelihood that someone other than Dayton was the source of the genetic material in the sperm recovered from S.S. was 1 in 2.5 million. In offering this opinion, an expert could rely on the Athabascan DNA database if this database met the test put forth in Rule 703. Because Judge Kauvar did not address this question after overruling Dayton's objection, we remanded the case to the superior court and directed Judge Kauvar to decide wheth-

**2.** 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

**3.** 974 P.2d 386 (Alaska 1999).

**4.** *Id.* At 395, 396–97.

**5.** *Id.* At 395.

**6.** *Id.*, citing *Daubert*, 509 U.S. at 593–94, 113 S.Ct. at 2796–2798.

er that database was the type of data that experts in the field would reasonably rely on.

On remand, the State offered Dr. Bruce Budowle, a senior scientist at the FBI laboratory in Quantico, Virginia, as an expert in the creation of DNA databases. Judge Kauvar qualified Dr. Budowle as an expert without objection from Dayton.

Dr. Budowle testified that the Athabascan database was scientifically valid and constituted the type of data that experts who analyze and use DNA databases rely on. He explained that the thirteen STR loci that were examined in the Athabascan DNA database are part of CODIS (Combined DNA Index System, the national DNA data bank) and are the accepted set of genetic markers used nationally and internationally. Dr. Budowle testified that he was a co-author of an article that described the Athabascan database and the Yup'ik and Inupiat databases. The article was published in *Forensic Science International*, a peer-reviewed publication, after Dayton's retrial.

Dayton presented no witnesses at the hearing.

After hearing Dr. Budowle's testimony, Judge Kauvar found that the Athabascan database was the type of data that experts would reasonably rely on. From our review of the record, we conclude that this finding is supported by substantial evidence.

Dayton argues that we should reverse his conviction because he claims that the State would not have met the requirements of Rule 703 if the court had addressed that question during his retrial. Dayton points out that

the peer-reviewed article that discusses the Athabascan database was not published until after Dayton's retrial. But a trial court considering the validity of scientific evidence is not required to find that the proponent of evidence must show all four of the enumerated *Daubert/Coon* factors. The supreme court noted in *Coon* that a trial judge may be convinced by other factors that scientific evidence is reliable.[7] We cannot say at this point that the State would not have been able to show that the database was reliable had Judge Kauvar addressed that point at the retrial.

Furthermore, if we granted Dayton a new trial because Judge Kauvar did not find during trial that experts would rely on the database, Dayton would benefit from an error that was harmless. The record now shows that the State established the reliability of the database and, therefore, that the evidence would be admissible at another trial.[8]

We conclude that it was not an abuse of discretion to allow testimony that relied on the Athabascan database.[9]

*Conclusion*

The judgment of the superior court is AFFIRMED.

---

7. *Id.*

8. *Compare Depp v. State,* 686 P.2d 712, 715–16 (Alaska App.1984) (ruling that error in holding grand jury in a location not permitted by court rule was harmless because venue for the grand jury was proper under rule as amended in the interim).

9. *See Coon,* 974 P.2d at 398.